IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROY WAYNE JACKSON, JR.,          §
TDCJ #1989547,                   §
                                 §
          Petitioner,            §
                                 §
v.                               §
                                 §          CIVIL ACTION NO. H-19-1269
LORIE DAVIS, Director,           §
Texas Department of Criminal     §
Justice - Correctional           §
Institutions Division,           §
                                 §
          Respondent.            §

## <u>MEMORANDUM OPINION AND ORDER</u>

Roy Wayne Jackson, Jr., has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from a judgment of conviction entered against him in Montgomery County, Texas. Respondent Lorie Davis has answered with Respondent's Motion for Summary Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry No. 33). Jackson has filed more than one response in the form of letters to the court and an "Initial Complaint" against the Montgomery County District Attorney's Office regarding his claims (Docket Entry Nos. 34, 35, 36, 37, 38). After considering all of the pleadings, the state court record, and the applicable law, the court will grant Respondent's MSJ and dismiss this action for the reasons explained below.

## I.  **Background**

A grand jury in Montgomery County, Texas, returned an indictment against Jackson in Case No. 12-12-13308-CR, charging him with continuous sexual abuse of his step-daughter (B.R.), while she was a child younger than 14 years of age (count one), and aggravated sexual assault of a child (B.R.) (count two).[1] After a mistrial was declared during his trial before the 221st District Court for Montgomery County, Jackson filed a Pre-Trial Application for Writ of Habeas Corpus Seeking Relief From Double Jeopardy ("Pre-Trial Habeas Application"), arguing that the mistrial was improperly declared and that a second trial was barred by law.[2] The trial court denied that motion.[3]  Jackson did not appeal the trial court's ruling or press his Double Jeopardy claim further in state court.

---

[1]See Indictment, Docket Entry No. 32-22, pp. 24-25; see also Complaint, Docket Entry No. 32-22, pp. 11-13 (describing the offenses).  For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2]See Pre-Trial Habeas Application, Docket Entry No. 32-22, pp. 123-29.  According to the Application, the trial court declared a mistrial based on "manifest necessity" after the defense requested a continuance to conduct additional DNA testing regarding the paternity of the complaining witness's child.  See id. at 124-25 (summarizing portions of the transcript from Jackson's first trial).

[3]See Order dated March 25, 2014, Docket Entry No. 32-22, p. 131.

During a second trial, the State presented evidence that Jackson began molesting B.R. when she was 8 years of age and that he had sex with her on a weekly basis until she reported the abuse at the age of 15.[4] B.R. disclosed that she became pregnant in the seventh grade, when she was 13 years of age, and that Jackson took her to get an abortion.[5] B.R. identified Jackson as the father of that child.[6] By the time B.R. reported the abuse at the age of 15, she was seven months' pregnant with another child fathered by Jackson.[7] After that child was born the State collected DNA evidence,[8] which confirmed that Jackson fathered the child by a statistical probability of 99.99999986 percent.[9]

In addition to testimony from outcry witnesses and a forensic DNA expert, the State presented evidence that Jackson admitted to a cell mate that he had sex with the victim when she was eight until she turned 15, and that Jackson also admitted that he had fathered her child.[10] The cell mate testified further that Jackson

---

[4]See Court Reporter's Record, vol. 4, Docket Entry No. 32-7, pp. 87-89, 95.

[5]See id. at 102-03, 159-60.

[6]See id. at 160.

[7]See id. at 47-48.

[8]See id. at 240-45.

[9]See Court Reporter's Record, vol. 5, Docket Entry No. 32-8, p. 174; State's Ex. 61, Court Reporter's Record, vol. 9 (continued), Docket Entry No. 32-13, pp. 60-61.

[10]See Court Reporter's Record, vol. 5, Docket Entry No. 32-8, pp. 122-23, 125, 128.

planned to say that one of his sons was the father.[11]  The State
presented evidence in the form of notes found in Jackson's cell and
jail phone calls between Jackson and his mother, in which the two
were overheard plotting various ways to convince B.R. to fabricate
testimony to establish his innocence.[12]  DNA testing excluded all
of three of Jackson's sons as a possible biological father of
B.R.'s child.[13]  B.R.'s mother (A.R.), who testified for the
defense, admitted on cross-examination that she had three sons with
Jackson before she turned 16.[14]  After hearing all of the evidence,
the jury found Jackson guilty as charged in the indictment and
sentenced him to life imprisonment on both counts.[15]

On direct appeal Jackson argued that (1) the evidence was
insufficient to support his conviction; (2) the trial court erred
by admitting evidence of DNA testing because the State failed to
establish that the lab was properly accredited in compliance with

_____

[11]Id. at 123.

[12]See Court Reporter's Record, vol. 5, Docket Entry No. 32-8,
pp. 243-44, 254-59, 269, 284-97; State's Ex. 67-68, 72, Court
Reporter's Record, vol. 9 (continued), Docket Entry No. 32-13, pp.
71-76, 79  (the audiotape that was played for the jury is not in
the federal habeas record, but the conversations are referenced in
testimony from jail officials and Investigator Ashton).

[13]See State's Exhibit 62, Court Reporter's Record, vol. 9
(continued), Docket Entry No. 32-13, p. 62.

[14]See Court Reporter's Record, vol. 6, Docket Entry No. 32-9,
pp. 106-07.

[15]Judgment of Conviction by Jury (count one), Docket Entry No.
32-30, p. 575; Judgment of Conviction by Jury (count two), Docket
Entry No. 32-30, p. 579.

Texas law; and (3) the trial court erred by admitting evidence of extraneous acts that prejudiced the jury, referencing the testimony given by A.R.[16] An intermediate court of appeals rejected these arguments after summarizing the voluminous evidence against Jackson that was presented at trial. Jackson v. State, Nos. 09-15-00071-CR, 09-15-00072-CR, 2016 WL 1159207, at *1-7 (Tex. App. — Beaumont March 23, 2016). Thereafter, the Texas Court of Criminal Appeals refused Jackson's petition for discretionary review.

Jackson challenged his conviction further by filing an Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under [Texas] Code of Criminal Procedure, Article 11.07 ("State Habeas Application") with the trial court.[17] Jackson argued that he was actually innocent and that he was denied effective assistance of counsel when his attorneys failed to: (1) offer an alternative defensive theory regarding B.R.'s infatuation with her biological father; (2) retain a defense expert to challenge the State's DNA evidence; and (3) to retain a forensic psychologist to help prepare for trial and offer mitigating evidence at punishment.[18] With the assistance of state habeas counsel, Jackson also presented additional evidence that included an unsworn handwritten statement from his son, Jason, who claimed

---

[16]Brief of Defendant-Appellant, Docket Entry No. 28-1, p. 24.

[17]State Habeas Application, Docket Entry No. 32-30, pp. 7-23.

[18]Id. at 12-17.

that he was the father of B.R.'s child,[19] and asked for an evidentiary hearing on his claim of actual innocence.[20]

After considering affidavits from Jackson's trial attorneys,[21] the state habeas corpus court entered findings of fact and concluded that Jackson was not entitled to relief on any of his claims.[22] In doing so, the state habeas corpus court, which also presided over the trial, found that Jason Jackson's unsworn statement was "not credible" and that none of the other evidence presented would have persuaded the jury to reach a different result.[23] The Texas Court of Criminal Appeals agreed and denied relief without a written order.[24]

---

[19]Exhibits A-T, Docket Entry No. 32-30, pp. 64-224 (Jason Jackson's handwritten statement is Ex. E, at 121).

[20]Memorandum in Support of Application for Writ of Habeas Corpus and Brief in Support, Docket Entry No. 32-30, pp. 32, 57-58.

[21]Affidavit of Randall L. Kallinen ("Kallinen Affidavit"), Docket Entry No. 32-30, pp. 457-61; Affidavit of Neal Davis, III ("Davis Affidavit"), Docket Entry No. 32-30, pp. 462-92; Affidavit of Brian T. Hobson ("Hobson Affidavit"), Docket Entry No. 32-30, pp. 493-96.

[22]Findings of Fact, Conclusions of Law, and Order Recommending Denial of Relief ("Findings and Conclusions"), Docket Entry No. 32-30, pp. 521-23.

[23]Id. at 523.

[24]Action Taken on Writ No. 82,715-02, Docket Entry No. 32-27, p. 1.

Jackson now contends that he is entitled to federal habeas relief from his conviction under 28 U.S.C. § 2254 for the following reasons:

1. He was denied effective assistance of counsel at trial because his attorney failed to (a) prepare for trial; and (b) present a defense using an expert witness, DNA, and lab work.

2. His conviction violated the Double Jeopardy Clause because he was tried twice for the same offense after the trial court abused its discretion by declaring a mistrial at his first trial.

3. The prosecutor engaged in misconduct when he asked jurors from the first trial who they had believed after a mistrial was declared.

4. The trial court abused its discretion when it allowed the introduction of extraneous-offense evidence over his defense counsel's objections.

5. The trial court lacked jurisdiction because the complaining witness was living in Liberty County when she was 15 years of age.

6. The complaining witness committed perjury.

7. The State improperly tampered with a witness by presenting testimony from one of Jackson's cell mates, who acted as a confidential informant.[25]

The respondent argues that Jackson is not entitled to relief on Claims 1 and 4, which were rejected previously during Jackson's

---

[25]Petition, Docket Entry No. 1, pp. 6-8. The court notes that Jackson proceeds pro se in this case. As such, the court has construed all of his pleadings under a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)).

direct appeal and state habeas corpus proceeding, under the governing federal habeas corpus standard of review.[26] The respondent argues that federal habeas review is unavailable for his remaining claims (Claims 2, 3, 5, 6, and 7), which were not raised previously in state court, because these claims are barred by the doctrine of procedural default.[27]

## II.  Standard of Review

A habeas corpus petition filed by a state prisoner may not be granted in federal court unless the petitioner has first "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  To the extent that Claims 1 and 4 were adjudicated on the merits in state court, these claims are subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d).  Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's decision "was based on an unreasonable determination of the facts in light of the

---

[26]Respondent's MSJ, Docket Entry No. 33, pp. 16-18, 22-24.

[27]Id. at 18-22, 24-27.

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The legal standard established by § 2254(d), as amended by the AEDPA, "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S. Ct. 504, 506 (2019). Under this highly deferential standard, "[a] state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (citations and internal quotation marks omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

A state court's factual determinations are also entitled to "substantial deference" on federal habeas corpus review. Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015); Wood v. Allen, 130 S. Ct. 841, 849 (2010) (noting that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). A state court's findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption of correctness extends not only to express factual findings, but also to implicit or "'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" Murphy v. Davis, 901 F.3d 578, 597 (5th Cir. 2018) (quoting Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

## III. Discussion

### A. Ineffective Assistance of Counsel (Claim 1)

Jackson contends that he was denied effective assistance of counsel in connection with his second trial.[28] Claims for ineffective assistance of counsel are governed by the standard announced in Strickland v. Washington, 104 S. Ct. 2052 (1984). To prevail under the Strickland standard a criminal defendant must demonstrate (1) that his counsel's performance was deficient and

---

[28]Petition, Docket Entry No. 1, p. 6.

-10-

(2) that the deficient performance resulted in prejudice. <u>Id.</u> at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id.</u>

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" <u>Garcia v. Stephens,</u> 793 F.3d 513, 523 (5th Cir. 2015) (quoting <u>Strickland,</u> 104 S. Ct. at 2064). "This is a 'highly deferential' inquiry, attended by 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Id.</u> (quoting <u>Strickland,</u> 104 S. Ct. at 2065). "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment that <u>Strickland's</u> first prong is satisfied." <u>Buck v. Davis,</u> 137 S. Ct. 759, 775 (2017) (citation and internal quotation marks omitted).

To satisfy the prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland,</u> 104 S. Ct. at 2068. A habeas petitioner must "affirmatively prove prejudice." <u>Id.</u> at 2067. A petitioner cannot satisfy the second prong of <u>Strickland</u> with mere speculation and conjecture. <u>See Bradford v. Whitley,</u> 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate

either deficient performance or actual prejudice.  See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009).

Jackson was represented during his second trial by a team of three defense attorneys, including Neal Davis, III, Brian Hobson, and Randall Kallinen.[29] Jackson contends that his defense attorneys were deficient because they failed to prepare adequately for trial.[30] Specifically, Jackson complains that his defense attorneys did not present testimony from an expert witness on DNA to challenge lab work done by the State's expert because the complainant (B.R.) had previously said that Jackson's son, Jason, was the father of her child.[31]

These claims were addressed on state habeas corpus review, where all three of Jackson's defense attorneys provided affidavits in response to his allegations of ineffectiveness.[32] Each one noted that they had been hired approximately two or three weeks before

---

[29]Findings and Conclusions, Docket Entry No. 32-30, p. 522.

[30]Petition, Docket Entry No. 1, p. 6.

[31]Id.  It appears that B.R. made this admission during her testimony at Jackson's first trial.  See Exhibit J, Court Reporter's Record, Dec. 10, 2013, Docket Entry No. 32-30, p. 173. It further appears that this admission, made for the first time in the middle of trial, caused the defense to request a continuance for the purposes of obtaining DNA testing to confirm the child's paternity and resulted in the mistrial that was declared.  See Pre-Trial Habeas Application, Docket Entry No. 32-22, p. 124.

[32]Kallinen Affidavit, Docket Entry No. 32-30, pp. 457-61; Davis, Docket Entry No. 32-30, pp. 462-92; Hobson Affidavit, Docket Entry No. 32-30, pp. 493-96.

the trial date.[33] At that time, the attorneys told Jackson and his family that they might not have sufficient time to secure the services of a DNA expert.[34] Lead defense counsel filed two motions for a continuance to investigate the DNA evidence, but the trial court denied each one.[35] The attorneys contacted a DNA expert from the University of North Texas, Dr. Robert Benjamin, but there was too little time to use him at trial.[36]

The state habeas corpus court noted that it was "familiar with the representation" provided by Jackson's trial team and found them "well qualified to represent defendants in felony criminal cases."[37] The state habeas corpus court found further that the affidavits provided by Jackson's defense counsel were "credible" and that

---

[33]Kallinen Affidavit, Docket Entry No. 32-30, p. 458; Davis Affidavit, Docket Entry No. 32-30, p. 463; Hobson Affidavit, Docket Entry No. 32-30, p. 494. State court records reflect that on January 13, 2015, shortly before his scheduled trial date of February 2, 2015, Jackson filed a pro se motion for new counsel because his appointed attorneys refused to file a motion for change of venue that was based on a conspiracy theory. See "Motion for Appointment of 'Competent' Counsel Due to Exceptional Circumstances," Docket Entry No. 32-22, pp. 209-17. On January 23, 2015, Davis filed a Motion to Substitute Attorney of Record, which was granted that same day. See Docket Entry No. 32-22, pp. 233-35.

[34]Kallinen Affidavit, Docket Entry No. 32-30, p. 458; Davis Affidavit, Docket Entry No. 32-30, p. 463.

[35]Davis Affidavit, Docket Entry No. 32-30, pp. 463-64, 467-92.

[36]Davis Affidavit, Docket Entry No. 32-30, pp. 463-64; Kallinen Affidavit, Docket Entry No. 32-30, p. 459.

[37]Findings and Conclusions, Docket Entry No. 32-30, p. 522.

Jackson was fully aware of the risk that an independent expert would not have time to review or retest the DNA evidence when he made the decision to retain new counsel shortly before the scheduled trial date.[38]  The state habeas corpus court noted that Jackson identified "no errors in the DNA evidence" and that there was no basis to believe that the DNA results presented at trial were not "credible and reliable."[39]  The state habeas corpus court also found that the jury heard evidence that Jackson suggested, in correspondence from the jail, that his son Jason had fathered B.R.'s child, instead of Jackson.[40]  The jury did not believe this defensive theory, however, and the state habeas corpus court observed that Jackson presented no "credible" evidence to support this assertion.[41]  The state habeas corpus court concluded, therefore, that Jackson's defense attorneys were not deficient under the legal standard found in Strickland.[42]

Credibility findings, such as those made by the state habeas corpus court with respect to defense counsels' affidavits, are entitled to substantial deference on federal habeas review.  See Coleman v. Quarterman, 456 F.3d 537, 541 (5th Cir. 2006) (citing Guidry v. Dretke, 397 F.3d 306, 326 (5th Cir. 2005)).  In that

_____

[38]Id.

[39]Id. at 523.

[40]Id.

[41]Id.

[42]Id. at 524.

respect, the state court's factual findings and credibility determinations are presumed correct for purposes of federal habeas corpus review unless they are rebutted with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Valdez v. Cockrell,</u> 274 F.3d 941, 947 (5th Cir. 2001); <u>see also Mays v. Stephens,</u> 757 F.3d 211, 214 (5th Cir. 2014) ("The presumption [of correctness] is especially strong when the state habeas court and the trial court are one in the same.") (quoting <u>Clark v. Johnson,</u> 202 F.3d 760, 764 (5th Cir. 2000)); <u>Boyle v. Johnson,</u> 93 F.3d 180, 186 (5th Cir. 1996) ("The presumption is particularly strong where, as here, the habeas court was the same court that presided over the trial.").

Likewise, where an ineffective-assistance claim was rejected by the state court, the Supreme Court has clarified that the issue on federal habeas review is not whether "'the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" <u>Knowles v. Mirzayance,</u> 129 S. Ct. 1411, 1420 (2009) (citation omitted). When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. <u>Id.</u> at 1413; <u>see also Richter,</u> 131 S. Ct. at 788 (emphasizing that the standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); <u>Beatty v. Stephens,</u> 759 F.3d 455, 463 (5th Cir. 2014) (same).

To the extent that Jackson contends that his attorneys failed to adequately prepare for trial by securing a DNA expert, he offers no evidence to rebut the state habeas corpus court's findings or credibility determinations. Likewise, Jackson offers no evidence showing that there was a DNA expert available to testify on his behalf or that any such testimony would have been favorable to the defense. In this context, "[c]laims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." Gregory v. Thaler, 601 F.3d 347, 353 (5th Cir. 2010) (citing Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007)). A petitioner who alleges ineffective assistance of counsel based on the failure to call either a "lay or expert witness" must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to the particular defense." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted). Absent a showing that a particular witness would have offered testimony favorable to the defense, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsels' part. See Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001).

Jackson's unsubstantiated allegations are otherwise insufficient to refute the state court's findings, which are supported by the record, and do not demonstrate that his attorneys were deficient for failing to prepare for trial or present witness testimony.[43] See Day, 566 F.3d at 540-41; see also Lincecum v. Collins, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence). Absent a showing of deficient performance or actual prejudice, Jackson has not demonstrated that the state habeas corpus court's conclusion was unreasonable or that he was denied constitutionally effective counsel under Strickland. Accordingly, Jackson fails to show that he is entitled to relief on Claim 1 under 28 U.S.C. § 2254(d).

## B. Error by the Trial Court (Claim 4)

Jackson contends that the trial court abused its discretion by admitting extraneous-offense evidence at his second trial.[44]

---

[43]In that regard, the uncontradicted evidence in the record shows that DNA testing confirmed that Jackson was the father of B.R.'s child and excluded all of Jackson's sons, including Jason, from possible paternity. State's Ex. 61 and 62, Court Reporter's Record, vol. 9 (continued), Docket Entry No. 32-13, pp. 60-63.

[44]Petition, Docket Entry No. 1, p. 7. Jackson also alleges as part of this allegation that the trial court abused its discretion by declaring a mistrial. See id. Because Jackson did not raise this issue in state court, it is procedurally barred for reasons

Jackson appears to take issue with testimony that was given on cross-examination by B.R.'s mother, A.R., regarding the fact that Jackson also fathered a child with A.R. when she was 13, which could be considered evidence of an aggravated sexual assault of a child under Texas law.[45] The respondent notes that this claim was rejected on direct appeal and argues that relief is not available because the admissibility of evidence is a question of state law.[46]

The intermediate state court of appeals addressed Jackson's claim as follows:

> In his final issue, Jackson argues the trial court erred in admitting "prejudicial testimony on an extraneous act [that] cause[d] irreparable harm" and should have been excluded under Rule 403. More specifically, Jackson objects to the admission of A.R.'s testimony as to her age when her sons, who were fathered by Jackson, were born; and, Jackson objects to the testimony relating to the fact that A.R.'s mother had attempted to file charges against Jackson in 1997 because A.R. became pregnant at age thirteen by Jackson. Jackson argues the evidence was unfairly prejudicial because it allowed the jury to infer "that the Appellant had done this before to the alleged victim's mother[]" and thereby increased the probability that Jackson would be found guilty for extraneous acts against A.R. rather than against B.R.

_____

set forth below in connection with his allegation in Claim 2, which asserts that a Double Jeopardy violation occurred when he was tried twice for the same offense after the mistrial was declared. See id. at 6.

[45]Id. at 7. See Tex. Penal Code §§ 22.021(a), 22.011(c) (governing the offense of aggravated sexual assault where the victim is a child).

[46]Respondent's MSJ, Docket Entry No. 33, pp. 22-24.

<u>Jackson v. State,</u> Nos. 09-15-00071-CR & 09-15-00072-CR, 2016 WL 1159207, at * 10 (Tex. App. — Beaumont March 23, 2016, pet. ref'd). The court of appeals held that the trial court correctly overruled the objection to this evidence because it was admissible under Rule 403 of the Texas Rules of Evidence, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." <u>Id.</u> (citing Tex. R. Evid. 403).

Noting further that Jackson did not raise an objection to the evidence under Rule 404(b), which governs the admission or exclusion of extraneous evidence of prior bad acts, the court of appeals also concluded that the evidence would have been admissible even if he had done so under a separate provision found in Article 38.37 of the Texas Code of Criminal Procedure, which allows such evidence in cases involving the sexual abuse of a child:

> Further, we note that even if Jackson had made a Rule 404 objection at trial to what he now calls "prior bad acts," extraneous-offense evidence, Rule 404(b) itself contains a non-exhaustive list of possible exceptions to the general rule prohibiting evidence of other crimes, wrongs, or acts. Tex. R. Evid. 404(b). Additionally, this type of evidence may have been admissible under Texas Code of Criminal Procedure Art. 38.37. Tex. Code Crim. Proc. Ann. art. 38.37; <u>Manning v. State,</u> Nos. 09-13-00533-CR, 09-13-00534-CR, 2015 Tex. App. LEXIS 12439, at **4-5, 2015 WL 8473347 (Tex. App. – Beaumont Dec. 9, 2015, no pet.) (mem. op., not designated for publication) ("In a prosecution for sexual abuse of a

child, the character of the defendant is relevant, and the tendency that such evidence may have to show that a defendant is the type of person who abuses children does not make the testimony inadmissible. <u>See</u> Tex. Code Crim. Proc. Ann. art. 38.37, § 2. In cases involving the sexual abuse of a child, this type of evidence is admissible because article 38.37, section 2 creates an exception to the Rules of Evidence that otherwise makes character evidence inadmissible. <u>Compare</u> Tex. R. Evid. 404(b) with Tex. Code Crim. Proc. Ann. art. 38.37, § 2.").

In this matter, A.R. testified as a witness on behalf of Jackson. A.R. agreed on cross-examination that she was thirteen years old when she first got pregnant by Jackson, and then she got pregnant by Jackson again when she was fifteen. A.R. also agreed that she and her daughter look alike. The trial court in this case could have reasonably concluded that the evidence in question was admissible and that the probative force of the evidence outweighed the possibility of prejudice....

<u>Jackson,</u> 2016 WL 11159207, at 11-12. Thus, the court of appeals held that the trial court did not abuse its discretion by admitting the testimony and affirmed the conviction. <u>See id.</u> at 12.

Jackson's claim concerns an evidentiary ruling that is based on state law. Claims concerning a state court's evidentiary rulings are not cognizable on federal habeas review. <u>See Estelle v. McGuire,</u> 112 S. Ct. 475, 480 (1991) (rejecting a claim that evidence was improperly admitted because "federal habeas corpus relief does not lie for errors of state law"). Thus, federal habeas corpus courts typically "do not review state courts' application of state evidence law." <u>Jones v. Cain,</u> 600 F.3d 527, 536 (5th Cir. 2010) (citing <u>Castillo v. Johnson,</u> 141 F.3d 218, 222 (5th Cir. 1998); <u>Mercado v. Massey,</u> 536 F.2d 107, 108 (5th Cir.

1976)); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("In habeas actions, this court does not sit to review the mere admissibility of evidence under state law.").

To prevail on a claim of trial-court error, a habeas petitioner must show that the alleged error was "so extreme that it constituted denial of fundamental fairness." Prystash v. Davis, 854 F.3d 830, 840 (5th Cir. 2017) (citations and internal quotation marks omitted); see also Bailey v. Procunier, 744 F.2d 1166, 1168 (5th Cir. 1984) (stating that relief is warranted "only when the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause"). To warrant relief, the trial court's error must have "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 113 S. Ct. 1710, 1722 (1993) (citation and internal quotation marks omitted).

Jackson does not establish that the testimony was inadmissible under state law or that the trial court erred in any way that had a substantial and injurious effect on the verdict. Because Jackson does not demonstrate that he is entitled to relief on this claim, the respondent's motion for summary judgment on this issue will be granted.

**C. All Remaining Claims are Procedurally Barred**

The respondent notes that Jackson did not raise the allegations he presents in his remaining claims (Claims 2, 3, 5, 6, and 7) on direct appeal or in his State Habeas Application under Article 11.07.[47] Arguing that Jackson did not exhaust state court remedies before seeking federal review of these claims as required by 28 U.S.C. § 2254(b), the respondent contends that these claims are barred from federal review by the doctrine of procedural default.[48]

As noted above, the federal habeas corpus standard of review requires a petitioner to first present his claims in state court and to exhaust all state court remedies through proper adjudication. See 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement the petitioner must first present his claims to the highest state court in a procedurally proper manner so that the state court is given a fair opportunity to consider and pass upon challenges to a conviction before those issues come to federal court for habeas corpus review. See O'Sullivan v. Boerckel, 119 S. Ct. 1728, 1732-33 (1999); Johnson v. Cain, 712 F.3d 227, 231 (5th Cir. 2013) (explaining that the exhaustion requirement found in § 2254(b) "is satisfied when the substance of the federal claim is 'fairly presented' to the highest state court on direct appeal or

---

[47]Respondent's MSJ, Docket Entry No. 33, pp. 18-22, 24-27.

[48]Id.

-22-

in state post-conviction proceedings"). The record confirms that Jackson failed to present the allegations found in Claims 2, 3, 5, 6, and 7 for adjudication by the Texas Court of Criminal Appeals, either on direct appeal or state habeas review.[49] As a result, these claims are unexhausted.

Jackson cannot now return to state court and raise his unexhausted claims because of the Texas procedural rule that prohibits successive writs unless the petitioner establishes exceptional circumstances, which are not present here. See Tex. Code Crim. Proc. art. 11.07, § 4(a). Jackson's failure to exhaust state court remedies when he had the chance to do so constitutes a procedural default that is adequate to bar federal review. See Neville, 423 F.3d at 480 (concluding that unexhausted claims, which could no longer be raised in state court due to Texas's prohibition on successive writs, were procedurally defaulted); see also Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (same) (citing Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995)).

Federal habeas corpus review of a defaulted claim is available only if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v.

---

[49]Brief of Defendant-Appellant, Docket Entry No. 28-1, p. 24 (listing issues for appeal); State Habeas Application, Docket Entry No. 32-30, pp. 12-17 (listing claims for state habeas review).

Thompson, 111 S. Ct. 2546, 2565 (1991). To satisfy the exception, which is reserved for fundamental miscarriages of justice, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 106 S. Ct. 2616, 2627 (1986). Jackson makes no showing of factual innocence in this case, and his status as a pro se litigant, standing alone, is insufficient to constitute cause for purposes of excusing a procedural default. See Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992). Because Jackson does not establish that an exception applies, Claims 2, 3, 5, 6, and 7 are procedurally barred from federal review.[50] Absent a valid claim for relief, Jackson does not show that he is entitled to a federal writ of habeas corpus under 28 U.S.C. § 2254(d), and his Petition must be dismissed.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional

---

[50]The respondent argues in cursory fashion that Jackson's defaulted claims are also without merit. See Respondent's MSJ, Docket Entry No. 33, pp. 18-22, 24-27. Because the claims are procedurally barred, the court does not address them further.

right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

### V.  Conclusion and Order

The court **ORDERS** as follows:

1.  Respondent's Motion for Summary Judgment (Docket Entry No. 33) is **GRANTED**.

2.  The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Roy Wayne Jackson, Jr. (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 17th day of January, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE